UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
ROSINA FELICIANO, INDIVIDUALLY, & ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED

                                **Plaintiff(s)**

      -against-

CITY OF NEW YORK (CITY), THE NEW
YORK CITY POLICE DEPARTMENT (NYPD),
POLICE OFFICER JOSEPH FRANCO
(FRANCO), IN HIS OFFICAL CAPACITY AS
THEN NEW YORK CITY POLICE OFFICER

                              **Defendants.**
--------------------------------------------------------

**SECOND AMENDED CLASS
ACTION COMPLAINT**

**TRIAL BY JURY DEMANDED**

**CIV.NO.24-CV-7212-ALC**

Plaintiff, **ROSINA FELICIANO, individually, and** on behalf of all others similarly situated, by and through his attorney RUDY VELEZ, Esq., respectfully shows to this court and alleges, as follows:

1.    Plaintiff brings this class action individually, and on behalf of all other similarly situated seeking compensatory damages against defendant's named herein, and alleges based upon the personal knowledge of Plaintiff, the investigation of counsel, and upon information and belief.

2.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure **ROSINA FELICIANO**, through her undersigned counsel, respectfully moves for class certification on the facts set forth in the following amended complaint and attached exhibits.

## PRELIMINARY STATEMENT

3.    Plaintiff is a Bronx resident who brings this civil rights action on behalf of all those similarly situated, against the **CITY** of New York (**CITY**) for its deliberate indifference to individual police officers of the New York **CITY** Police Department engaging in a pattern and

practice of illegal and unconstitutional conduct, including malicious prosecution, fabricating evidence, denial of due process of law, perjury in circumventing Fourth Amendment restrictions, and arrests without probable cause.

4.     Specifically, defendant **CITY** knew or should have known that defendant, former detective Joseph Franco (**FRANCO**), a 19-year veteran in the narcotics division in the Bronx, Queens and Manhattan, with thousands of arrests to his credit, through his key participation, sent numerous people to prison by denying them due process of law.

5.     The convictions against those people, similar situated, that **FRANCO** claimed either possessed or sold drugs were thrown out. **FRANCO's** pattern and practice of violating people's civil rights were repeated some 324 times; those identified as similarly situated plaintiffs in this action comprised only 75% of the targeted class. In each of these cases. **FRANCO** compounded his misconduct by repeating his lies over and over again.

6.     In a statement by the Manhattan District Attorney's Office, the District Attorney vowed to continue to bring the full weight of the law against uniformed police officers who lie and undermine the public trust in law enforcement which we rely on to keep New York Safe. This same Manhattan district attorney office's failure to meet required deadlines allowed FRANCO, the disgraced ex-police detective in question, and the subject of this lawsuit to walk away from his perjury indictment a free man---unlike the hundreds of people he put behind bars. FRANCO'S lawyer claim FRANCO was "just doing his job", and indeed he was. His job was to engage in a pattern and practice of framing innocent people by lying about seeing them deal drugs. Although the Manhattan district attorney dropped the "ball,"the New York City Police Department did not and fired FRANCO after a full blown departmental trial.

## JURISDICTION AND VENUE

7.    This action is brought forth pursuant to 42 U.S.C § 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the laws of the State of New York.

8.    Jurisdiction is founded upon 28 U.S.C § 1331, 1343 (1-4) and 2202.

9.    Venue is proper in this district pursuant to 28 U.S.C § 1391 (b).

## JURY DEMAND

10.    Plaintiff and all those similarly situated demand trial by jury in this action.

## PARTIES

11.    Plaintiff **ROSINA FELICIANO (FELICIANO)** is, an American Citizen residing in Brookyln. County, New York. On behalf of all others similarly situated, plaintiff brings this action against defendants seeking money damages and further relief that may be just and proper.

12.    Defendant CITY OF NEW YORK (CITY) is a municipal corporation organized under the laws of the State of New York and the public employer of the police officer named as a defendant in this action. Defendant NEW YORK CITY POLICE DEPARTMENT (NYPD) is an agency of the City of New York.

13.     At all times relevant herein, defendant **JOSEPH FRANCO (FRANCO)** was a Police Officer of the NYPD, acting as an agent servant and employee of defendant **CITY** and in furtherance of the scope of his employment and acting under color of the law; to wit under color of statues, ordinances, regulations, policies, customs and usages of the **CITY** and/or the Police Department.

14.     Franco was fired from the NYPD after a departmental trial. **SEE Exhibit A,** **FRANCO** *Police Department trial, Final Order of Dismissal. In 2019* **FRANCO** *was arrested and charged with fabricating the facts of the three separate narcotics transactions that never happened after his allegations were ultimately contradicted by surveillance video and statements from others involved in the arrests. On April 24, 2019,* **FRANCO** *was indicted on four counts of perjury, nine counts of filing false paperwork, and three counts of official misconduct. Three months later a New York County grand jury added ten additional counts of perjury and related charges based on* **FRANCO'S** *conduct in two other cases.* **FRANCO** *was acting as agent, servant, and employee of defendant City of New York.*

15.     At all times relevant herein, defendant FRANCO was acting under the color of state law.

## FACTUAL ALLEGATIONS OF ROSINA FELICIANO AS REPRESENATIVE OF THE PROPOSED CLASS

16.     On September 7, 2012, at approximately 04:5 0 P.M., plaintiff was in the vicinity of 931 Fox Avenue, Bronx New York with a few friends. **FRANCO** claimed he bought crack-

cocaine from FELICIANO while working as an undercover. **FRANCO** claimed he gave FELICIANO MONEY IN EXCHANGE FOR THE CRACK HE CLAIMS FELICIANO GAVE HIM. FRANCO communicated this information to the back-up police who then arrived and searched **FELICIANO** and allegedly recovered crack from **FELICIANO. FELICIANO** was arrested and taken to Bronx Central Booking. These charges were entirely fabricated. Plaintiff did not sell narcotics to anyone.

17.    In his sworn Criminal Court Compliant Police Officer FRANCO informed his partner of the above stated information and it was further memorialized in the actual felony complaint.

18.    This sworn statement was fabricated because **FRANCO** informed the deponent, with false information regarding **FELICIANO**. Plaintiff did not engage in any transaction with anyone involving the sale of drugs.

19.    Plaintiff's conviction for the sale of a controlled substance in the Fifth Degree was vacated, and his indictment dismissed with the consent of the Bronx County District Attorney's Office on September 24, 2021, **SEE EXHIBIT B:** *ORDER by Judge Alvardo, Bronx Supreme Court Criminal Term-Part 17 which ordered, adjudged and decreed thatFELICIANO'S conviction for violation of penal law sec. 220.31 (1) and related counts , is vacated because the judgement was obtained in violation of a right of the plaintiff (14 Amendment) under the constitution of this state and the United States, and the ORDER further ordered, adjudged and decreed thatFELICIANO'S indictment is dismissed from the criminal history of plaintiff.* Other convictions from cases in which **FRANCO** played a key role were also vacated and dismissed on or about September 8, 2023. **SEE EXHIBIT C:** *Local News, District Attorney Tossing More Drug*

5

*Cases Tied To N.Y.P.D Detective Accused of Framing Innocent People*

20.    According to various newspaper and media accounts, some 324 criminal convictions tied to the testimony of former N.Y.P.D officer **FRANCO**, accused of lying and framing innocent people, have been thrown out. **SEE EXHIBIT D**: *Press Release, September 7th, 2023, By Bronx District Attorney's Office.*

21.    The Bronx District Attorney's office began an exhaustive review of Bronx cases hinging on **FRANCO'S** testimony and sworn statements and discovered that **FRANCO** committed well over 300 acts of police misconduct, ranging from providing false statements to perjury, when he worked as an undercover police officer in the Bronx from 2011-2015.

22.    The Bronx District Attorney's office vacated hundreds of convictions because the convictions depended on the word of **FRANCO** who was now charged and indicted for perjury. **FELICIANO'S** prosecution was one such case of malicious lies, perjury, and fabricated evidence. **SEE EXHIBIT E**: *Appendix Statement by Bronx District Attorney's Office.*

23.    The acts complained of herein, and the vacatur of 324 convictions are a direct and proximate result of the failure of the City of New York and the N.Y.P.D properly to select, train, supervise, promote and discipline police officers and supervisory officer, **SEE EXHBIT D,** *Infra, Press Release.*

24.    The failure of the City of New York and the N.Y.P.D to properly select, train and supervise, promote and discipline police officers and supervisor officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

25.    The official policies, practices and customs of the City of New York and the N.Y.P.D alleged herein violated plaintiff's and the proposed class's due process rights guaranteed by the Fourteenth Amendment to the Constitution of the United States.

26.    The Plaintiff also moves to be appointed representative of the Class, and for the appointment of the Law Office of Rudy Velez and associates to serve as counsel pursuant to Fed. R. Civ. P 23(g).

27.    Plaintiff brings this class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) on behalf of the Class defined as people arrested by **FRANCO**, from 2011-2015 whose convictions have been vacated and dismissed due to **FRANCO'S** participation as detailed herein. **SEE EXHIBIT F,** *List of Those Similarly Situated Exonerated Proposed Class Members, Who Were Identified by The Conviction Integrity Bureau of The Bronx District Attorney's Office.* All these convictions were overturned because of **FRANCO'S** key role in initiating their prosecutions.

## CLASS ACTION ALLEGATIONS

28.    A further description of those people arrested due to ex-detective Franco's key participation is as follows:

All persons whose judgement of conviction were vacated by order of the Bronx Supreme Court issued between September 2021 and September 2023 upon the People's motion and defense attorney's motion. The Supreme Court, Bronx County, Criminal Court of the City of New York vacated and dismissed these convictions after a thorough investigation of Joseph Franco, an N.Y.P.D officer who was the key witness in all of the terminated convictions. **FRANCO** was indicted in New York County in 2019 on perjury and other charges. He was fired from the police force on March 23, 20220 after a departmental trial convicted **FRANCO** of multiple allegations of providing false statements and committing perjury (Grand Jury and Trial testimony) in narcotic related transactions he claims to have witnessed or participated in as a member of the N.Y.P.D. **SEE Exhibit A,** *INFRA,* **FRANCO** *Police Departmental Trial, Case No. 2019-20565, Dated March 23, 2020.*

7

29.    The forgoing Class consists of 324 persons: the named Plaintiff, four other persons, who have already filed (*see Felicano v. City of New York, No 24-CV-5063(JGLC), (S.D.N.Y.); Torres v. City of New York, No. 24-CV-5326(AKH, (S.D.N.Y), Restituyo and Singleton v. City of New York, 24-CV-4939*, the list of names in *EXHIBIT F* and the rest of defendants whose names are known to the Bronx and Manhattan district attorney.

30.    Under Federal Rules of Civil Procedure 23 ("Rule 23'), a plaintiff may bring a civil action on behalf of a class "Only If": "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class" Fed. R. Civ. P. 23 (a) (1)-(4).

31.    In addition, under Rule 23(b) (3), which governs the proposed class action here, the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23 (b) (a)

32.    In addition to the requirements of numerosity, commonality, typicality, adequate representation, predominance, and superiority set forth in Rule 23, the Second Circuit has recognized an "implied requirement of ascertainably". "To be ascertainable, the class must be "readily identifiable. Such that the court can determine who is in the class and, thus, bound by the ruling."

8

33.     If the Rule 23(a) criteria are satisfied, the proposed class must also satisfy at least one of the categories provided in Rule 23(b) to be certified as a class action. The district court is afforded broad discretion in class certification questions because the District Court is often in the best position to assess the propriety of the class action. Class actions thus give voice to those similarly situated who would have no realistic day in Court if a class action were not available.

## A.    The Proposed Class Satisfies Rule 23(a)

### 1.    Numerosity – Rule 23(a)(1)

34.     This case satisfies the essential element of any class action: the proposed class be so large that joinder of all individual class members is impracticable. See Fed. R. Civ. P. 23(a)(1). Where, as here the cases involve a class numbering approximately 324 cases the numerosity requirement of Rule 23 (a)(1) is easily met. Indeed, numerosity can be presumed when a class contains as few as 40 members. In this case, the proposed plaintiff class consists of hundreds of people. Any argument that that the proposed class does not satisfy the numerosity requirement would be frivolous.

35.     The members of the Class are so numerous as to render joinder impracticable. Joinder is also impracticable because many Class members are not aware of the fact that their constitutional rights have been violated and that they have the right to seek judicial redress. Many Class members lack sufficient means to retains an attorney to prosecute a civil rights lawsuit. Moreover, as victims of unconstitutional policing and prosecution, many class members do not bring individual claims for

9

fear of retaliation and reprisal by N.Y.P.D officers. See the matter of Julio Irizarry: On February 21, 2017 New York City Police Detective **JOSEPH FRANCO** arrested 46-year-old Julio Irizarry after **FRANCO** reported he observed Irizzary engage in an observation sale in Manhattan. On June 28, 2017, Irizarry plead guilty in New York County Supreme Court to criminal possession of a controlled substance in the third degree. He was sentenced to three years in prison. In 2018 **FRANCO** came under investigation by the District Attorney's Office after video from a surveillance camera proved that it was impossible for **FRANCO** to have seen Irizarry participate in an observation sale with anyone. On December 5, 2018 Irizarry's conviction was vacated and dismissed. In April 2019 **FRANCO** was indicted on 16 counts, including perjury for framing Irizarry. Irizarry never filed a lawsuit because he was afraid of retaliation by the police. **SEE Exhibit G** *The National Registry of Exonerations.)*

### 2. Commonality – Rule 23(a)(2)

36.     Rule 23(a)(2) requires only that a "single common question" unite the proposed class. Rule 23(a)(2) "does not require all questions of law or fact be common to the class. "

37.     Here, common issues abound. Plaintiff's' claims "must depend upon a common contention of such a nature that it is capable of class wide resolution – which means

that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

38.   The proposed class satisfies the commonality requirement because there are both legal and factual questions common to all members of the proposed class. Common questions include generally:

- Whether **FRANCO** arrested proposed Class members without probable cause;

- Whether **FRANCO** committed perjury and reported false statements in the prosecution that led to the convictions;

- Whether the convictions were vacated and dismissed because the proposed Class members were denied Due Process of Law.

39.   In short, all class members, including the named Plaintiff, allege that they were victims of a pattern and practice set, tolerated, and enforced by the CITY, through the leadership structure of the N.Y.P.D and the Bronx County District Attorney's Office, to stop, seize, and maliciously prosecute vulnerable New Yorkers in marginalized communities in order to cover up police misconduct and bolster arrest statistics. All Class members, including the named Plaintiff, allege that they were deprived of Due Process as attested to in an ORDER of the Bronx Supreme Court, Criminal term, Part 17, **SEE Exhibit H,** *Bronx Orders that simultaneously vacated their convictions.*

11

40.     Given that all claims in this case emanate from the single mass exoneration pioneered under the current District Attorney of Bronx County, the common issues of law and fact predominate over any individual issues.

### 3.  Typicality – Rule 23(a)(3)

41.     The claims of the class representatives here are as Rule 23 (a)(3) requires, "typical" of those of the absent class members. The proposed class representatives' claims and defenses are typical because they arise from the same general "course of events" as those of the absent class members and rely on "similar legal arguments' to prove defendants' liability.

42.     The typicality requirement "primarily directs the district court to focus on whether the named representatives' claims are the same essential characteristics as the claims of the class at large."

43.     Typicality is determined by the nature of the claims of the class representative, not by the specifics facts from which they arose.

44.     Representative claims are typical whereas, here, their injuries and those of the absent class members arise from malicious prosecutions by the same disgraced officer, **JOSEPH FRANCO**. Like all other class members, the named Plaintiff was compelled to live under the weight of a tainted criminal conviction, along with all the collateral consequences attendant such a judgement, for many years before FRANCO'S misconduct came to light and afforded plaintiff some measure of relief from the tainted criminal judgement.

45.    The violations suffered by plaintiffs are typical of those of the class they seek to represent. Plaintiffs' claims arise from the same course of unconstitutional conduct that gives rise to the claims of all the proposed class members, and are based upon the same legal theories as those of the putative class. Here, plaintiff claims among other things, that ex-officer **FRANCO'S** involvement in his arrest violated his Fourteenth Amendment Due Process Rights violative of the United States Constitution. All of the proposed class members had their Due Process Rights violated in similar fashion by **FRANCO**. Thus, by advancing his own interests, **JEFFERSON** will advance the interests of the class.

46.    Moreover, the typicality requirement can be satisfied despite factual differences among the claims if the name Plaintiff allege that ex-office **FRANCO** engaged in the same unlawful conduct toward the proposed class. The typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.

47.    Typicality is usually found where the "same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented.

48.    In the case at bar, ex-officer **FRANCO'S** misconduct, false statements and perjury violated plaintiff's due process rights under the 14th Amendment as well as all the due process rights of the proposed class.

### 4.    Adequacy of Representation – Rule 23(a)(4)

49.    Plaintiff satisfies Rule 23(a)(4)'s requirement that class representatives "fairly and adequately protect the interests of the class.' Fed. R. Civ P. 23(a)(4). "[A]dequacy

of representation entails inquiry as whether: 1) plaintiff[s'] interests are antagonistic to the interest[s] of other members of the class and 2) plaintiff[s] attorneys are qualified, experienced and able to conduct the litigation. "Both requirements are met here. The proposed class representative has no conflict with any class members and will fairly and adequately protect the interests of the classes. Plaintiff is an adequate representative because he was subjected to the same unlawful conduct as the class members and suffered the same injuries that the action seeks to remedy.

50.    Counsel is competent and experienced in federal civil rights litigation and has been retained by FELICIANO and others to represent the plaintiff class. Counsel for the plaintiff has the resources, expertise and experience to prosecute this action. Counsel has also dedicated significant time to investigating the claims of plaintiff and the proposed class.

51.    The Law Office of Rudy Velez and Associates has settled close to fifty (50) 42 U.S.C § 1983 civil rights lawsuits against the City of New York. The following are a sample of some those settled lawsuits (all S.D.N.Y):

- *Donald McConney v. City of New York: 98-cv-4248:* Settled for $1,350,000.00

- *Santiago v. City of New York:99-cv-5704:* Settled for $1,500,000.00

- *Edwards v. City of New York:00cv5958* Settled for $1,500,000.00

- *Washington v. City of New York:06-cv-3105:* Settled for $1,200,000.00

- *Mobley v. City of New York:09-cv-7757:* Settled for $650,000.00

- *Barnes v. City of New York:23-cv-1070 (E.D.N.Y.):* Settled for $682,000.00

- *Harris v. City of New York: 24-cv-3974:* Settled for $100,000.00

52. Accordingly, both elements of Rule 23(a)(4) are satisfied.

### 5. Ascertainability

53. The Second Circuit has established a fifth prerequisite to class certification, "the implied ascertainability requirement," which demands that a class be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." "A class is a ascertainable when defined by objective criteria...and when identifying its members would not require a mini-hearing on the merits of each case." The court must be able to determine who is the class "without having to answer numerous individualized fact-intensive questions."

54. All class members, including the named Plaintiff, allege that they were deprived of due process by an order of the Bronx Supreme Court that simultaneously vacated their conviction. Given that all claims in this case emanate from the single mass exoneration pioneered under the District Attorney of Bronx County, the common issues of law and fact predominate over any individual issues.

55. The mass exoneration reference herein produces approximately 324 overturned convictions. Then detective **FRANCO** played a key role in the arrest and prosecution of **FELICIANO**, as well as the proposed class members, who were arrested, charged and ultimately convicted for various rimes as a result of **FRANCO'S** participation in supporting these convictions.

56.    The actual number of exonerated cases associated with **FRANCO** may be as high as 500. **SEE Exhibit I, More than 500 cases connected to FRANCO dismissed.**

57.    Because of then detective **FRANCO'S** essential role in these prosecutions, the integrity of each prosecution was irrevocably impaired, and, as a result, the convictions were obtained in violation of plaintiff **FELICIANO** and each proposed class member's constitutional right to due process under the 14th Amendment to the United State Constitution and the New York Constitution Article I, Section 6. Prosecution that relied on false sworn statements cannot stand even in cases where a defendant has entered a plea of guilty. The district attorney was duty bound to dismissed these identified cases.

58.    The Bronx District Attorney's Office has generated a list of those similarly situated class members who have already been ASCERTAINED by the conviction Integrity Bureau of the Bronx District Attorney's Office in an extensive investigation into police corruption and misconduct by then police officer **FRANCO, SEE EXHBIT F, *infra, List of Those Similarly Situated Proposed Class Members Including the Representative Plaintiff, ROSINA FELICIANO.***

### Rule 23(b) Requirements

59.    In addition to this list of approximately forty (40) proposed class members (**SEE EXHBIT F,infra,**) an additional sixty-seven (67) convictions in the Bronx, connected to ex- NYPD detective **FRANCO** were dismissed on September 7, 2023 (**SEE EXHBIT D,** *Infra, Bronx District Attorney Press Release, Dated September 7 ,2023). The Total Number of Convictions Reliant on **FRANCO** That Have Been*

16

*Dismissed After Review by The Bronx District Attorney's Conviction Integrity Bureau Rose to Three Hundred Twenty-Four (324) ASCERTAINED Convictions.*

60.    After satisfying the Rule 23(a) perquisites, the proposed class must qualify under one of the three categories set forth in Rule 23(b). Plaintiff seeks certification under Rule 23(b)(3), which allows for class certification if common questions "predominate over any questions affecting only individual members" and if class resolution "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

61.    For the additional reasons discussed below, plaintiff submits that common issues predominate and that the class action is the superior method for adjudicating the claims presented here.

## A. Predominance

62.    "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.

63.    "The predominance inquiry is a core feature of the Rule 23(b)(3) class mechanism.

64.    Class -wide issues predominate "if resolution of some of the legal or factual questions that qualify each class members case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof."

65.    While "Rule 23(b)(3) requires that common questions predominate," however, it does not require "that the action include only common questions".

17

66.    Plaintiff can show that al class members' damages are susceptible to calculation based on a class-wide formula, using Defendants' records. Plaintiffs seek to be made whole for their injuries that followed from loss of liberty as a result of a denial of Due Process.

67.    The common issue that predominates in this claim for class certification is the inherent value of a day of lost liberty due either to incarceration or the restrictions of liberty posed by post release suspension, forced court appearances, in patient programs and supervised probation.

68.    Relevant records can be reviewed and considered when calculating the number of days of loss of liberty.

69.    Damages calculation based on a class-wide formula can be demonstrated by a recent settlement of a similar type lawsuit, *Doneal Barnes v. City of New York, 23-CV-1070-CLP (E.D.N.Y).*

70.    In **BARNES**, plaintiff's conviction was overturned in Brooklyn Supreme Court by way of a Writ of Error coram Nobis and was part of a mass exoneration of convictions attributed to thirteen (13) convicted ex-police officers who played a key role in the prosecution of Doneal Barnes and hundreds of others in the confines of the Eastern District of New York. When it came time to determine the settlement amount for this lawsuit the City proposed a formula or scale to determine the monetary value of Barnes damages' for loss of liberty **SEE EXHBIT J, INFRA,** *City's Calculation for Loss of Liberty. Barnes Lawsuit Involved Identical Claims of Civil Rights Violations, and Instead of **FRANCO** As the Corrupt Defendant Ex-*

*Policer, Barnes Lawsuit Named* **JERRY BOWENS,** *A Convicted, Disgraced, Corrupt N.Y.P.D officer.*

71.    The questions at issue here predominates this case because defendants will likely be liable to all parties or to none.

72.    Class issues predominate over individual issues because" if plaintiff succeeds in proving the alleged denial of Due Process "then each of the class plaintiffs will likely prevail" on his or her claims.

73.    Furthermore, some factual variation in the circumstances of the class members does not defer the predominance requirement.

74.    When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3), even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

**B. Superiority**

75.    To proceed under Rule 23(b)(3), common questions must not only predominate, but a class action must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)

76.    Given the sheer number of class members and the presumed demographics of the class-which consists of individuals who were part of mass exonerations-a class action is not just superior to other methods of adjudication, but the only method of

19

adjudication. Absent class certification it is virtually certain, that the rights of individual class members will go unvindicated.

77.     Superiority is satisfied where class members' economic disadvantage renders it improbable that large numbers of class members are capable of litigating individually. In considering Rule 23(b)(3) superiority, it is appropriate for the court to consider the inability of the poor or uniformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually.

78.     Class certification will permit the resolution of thousands of individual claims in a single forum, at one time, thereby avoiding either a multiplicity of repetitive lawsuits, or worse yet, and more likely, no lawsuits at all, when plaintiffs are "aggrieved by the same civil right violation the case "presents precisely the type of situation for which the class action device is suited," since many nearly identical litigations can be adjudicated in unison.

79.     Class actions give voice to those similarly situated plaintiffs who would have no realistic day in Court if a class action were not available.

80.     Accordingly, it is possible that class members would be less likely to pursue their claims individually, considering that the Class is estimated to be over 100 plaintiffs alleging that they were harmed by **FRANCO'S** key participation in their convictions a class action is superior to other methods of adjudicating these claims.

81.     The class should be certified pursuant to Federal Rule of Civil Procedure 23(a) and (b)(1) (b), (2) and (3) because all of the require requirements are satisfied, and

20

because a class action is the clearly superior method of adjudicating the common claims against Defendants in the forum where the harm was inflicted-the Southern District of New York.

## CAUSES OF ACTION

### COUNT ONE

### Against Defendants for Violations of 42 U.S.C § 1981, 1983 Fourth and Fourteenth Amendments; Malicious Prosecution on Behalf of the Proposed Class Similarly Situated and Feliciano

82.     The plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

83.     On or about 2011 through 2015, including September 7, 201, the defendants initiated criminal proceedings against the plaintiff and all other similarly situated by misrepresenting and falsifying evidence in criminal court. P.O **FRANCO** continued his lies by allowing the false information he provided either by himself or to his back-up police officers to be written on Felony Complaints and or told in the grand jury in order to secure indictments.

P.O **FRANCO** misrepresented and falsified evidence that created a falsehood in signing the felony complaints and P.O **FRANCO'S** lies were material for a finding of probable cause. In commencing and continuing the prosecution of plaintiff, and all those similarly situated, defendants caused plaintiff, and all those similarly situated, to be falsely charged with acts in violation of the Penal law of State of New York.

84.     In the prosecution of **FELICIANO**, **FRANCO** not only played an active role in the prosecution, he was the key witness and the main officer who provided incriminating false statements to the Bronx District Attorney's Office (BDAO). **SEE EXHIBIT K, FELICIANO** *Defense Attorney C.P.L 440.10 Motion to Dismiss.*

85.     In the **FELICIANO** prosecution, as well of all those in the proposed class, the Bronx District Attorney's Office (BDAO) materially relied on the sworn testimony and evidence provided by FRANCO. There was no independent evidence– separate and apart from evidence that depended on **FRANCO'S credibility**- to corroborate **FRANCO'S** account. **SEE EXHBIT E, infra,** *(APPENDIX: Bronx District Attorney Statement).*

86.     In **FELICIANO'S** criminal case, as well as the proposed class, **FRANCO**, acting in his capacity as an undercover officer, would allege that he observed a narcotics transaction, or that he acted as an undercover officer, and exchanged pre-recorded buy money for drugs.

87.     In **FELICIANO'S** criminal overturned conviction, **FRANCO** operated as the undercover and was the sole witness claiming **FELICIANO** participated in a direct sale on September7, 2012. **SEE EXHIBIT L,** *FELICIANO INDICTMENT, Ultimately Overturned on September 21, 2021.*

Plaintiff, and all those similarly situated ultimately were deprived of their liberty by either being incarcerated, placed on probation, parole or supervision.

88.     During the course of **FELICIANO'S** prosecution **FRANCO** was regularly in touch with prosecutors regarding the facts and details of **FELICIANO'S** criminal case.

89.     **FRANCO** pointed out **FELICIANO'S** in a confirmatory show-up and this information was recorded by the BDAO and memorialized in a Notice pursuant to CPL

710.30(1)(b) which was prepared by the BDAO. 1In reality FRANCO used FELICIANO'S NYS Id to confirm her identification. **SEE EXHBIT M**, *FELICIANO NYS ID.* The statements and participation **FRANCO** provided in **FELICIANO'S** prosecution was critical and at the same time false.

90.     Neither plaintiff nor those similarly situated gave defendant city, it agents, servants or employees, including the Police Officer **FRANCO** probable cause to believe that plaintiff, and all those similarly situated, had committed the falsely charged illegal acts. Although **FELICIANO'S** was indicted as a result of the statements FRANCO provided about the case, the indictment was procured by fraud. **FRANCO** misrepresented evidence used in the Grand Jury to indict **FELICIANO'S**. Probable cause was VITIATED.

91.     Furthermore, **FELICIANO'S**, upon information and belief, denies participating in any sale of narcotics,

92.     **FELICIANO'S** submits that he was hanging out in front of where he lived at that time 990 Anderson Avenue, Bronx, New York talking to Mackey.

93.     **FELICIANO'S** was a distance from Diana Ramirez when she spoke to Mackey and paid no mind because that conversation did not involve him. **FELICIANO'S** submits his only crime was associating with Mackey; nothing more. Mere presence at the scene of a crime, even with knowledge of that crime does not establish probable cause, much less guilt.

94.     At the time of his arrest on May 23, 2013, **FELICIANO'S** had a prior felony conviction for sale of drugs and was informed that if he went to trial, the information concerning his conviction could be used against him should he testify.

95.    **FELICIANO'S** plead guilty to avoid a much long sentence knowing that **FRANCO**, the undercover, would testify against him. **FELICIANO'S** was aware that **FRANCO** in fact had falsely reported that **FELICIANO'S** was observed to have participated in a drug transaction which was material and likely to influence a jury's verdict. **FRANCO** had also in fact forwarded this information to Bronx prosecutors. For the same reasoning detailed here that probable was vitiated due to fraud by **FRANCO, FELICIANO'S** so-called admission at allocation is also nullified.

96.    The defendants acted with malice because then **P.O FRANCO** did not arrest neither the Plaintiff nor those similarly situated with the desire to see the ends of justice served but rather with a false motive or planting ad fabricating evidence and thus furthering his career and arrest quota.

97.    As a result of the false evidence provided by defendants, Plaintiff and all those similarly situated were forced under threat of issuance of a warrant to defend against false charges.

98.    Plaintiff, and all those similarly situated ultimately were deprived of their liberty by either being incarcerated, placed on probation, parole or supervision. **FELICIANO'S** was sentenced to 47 days incarceration plus 12 months,14 days in an in-patient program.

99.    The conduct of the defendants was the direct and proximate cause of plaintiffs' loss of liberty starting from one day to four years, which violated plaintiffs' statutory rights guaranteed by the laws and Constitution of New York and the United States.

100.    On September 24, 2021, plaintiff's conviction was vacated and the indictment dismissed with prejudice pursuant to an ORDER of the Supreme Court of State of New York.

## COUNT TWO

## AGAINST DEFENDANTS FOR VIOLATIONS OF 42 U.S.C § 1981, 1983

## AND THE FOURTEENTH AMENDMENT VIOLATIONS FOR

## FABRICATED EVIDENCE ON BEHALF OF THE PROPOSED CLASS

## AND FELICIANO

101.    Plaintiff on behalf of the proposed class, repeats and reiterates the allegations contained in paragraphs "1" through "100" as if fully set forth herein.

102.    That the aforesaid and imprisonment was malicious, unlawful, and not based upon a warrant, probable cause, and or any justification but based on fabricated evidence. The defendant **CITY**, through its agents, servants and/or employees, including **FRANCO** acted in bad faith and without probable cause in committing the aforesaid arrest and imprisonment of **FELICIANO'S** and the Proposed Class. Police Officer **FRANCO** fabricated information, to wit he lied about his observation of **FELICIANO'S** participation in the sale of crack-cocaine. **FRANCO** also lied regarding his participation in the arrest and prosecution of those people listed in **EXHBIT F**, *infra*.

103.    That the aforesaid arrest and imprisonment was made with fabricated evidence as sworn to in the felony criminal complaint.

104.    In addition, **FRANCO** pointed out **FELICIANO'S** and confirmed his identity and **FRANCO** did the same practice to the proposed class, acting as an undercover. The information **FRANCO** gave to prosecutors formed the basis for **FELICIANO'S** prosecution and the Proposed Class and they became aware that this fabricated evidence if believed would likely influence a jury's verdict and convict them.

105. **FRANCO** himself actually met with prosecutors and directly forwarded to the BDAO incriminating, fabricated evidence that led to **FELICIANO'S** and the proposed class's prosecution by superior court information and/or indictments.

106. **FRANCO'S** fabrication of evidence took on many faces. **FRANCO** filed false information in arrest reports, he repeated false statements to fellow officers who were informed by him of critical facts which turned out to be false; he repeated false reports when he spoke to prosecutors in person and he committed perjury when he testified in grand juries concerning prosecutions he initiated. **SEE EXHBIT N**, *The New York Times, "Detective's Lies Sent Three People to Prison, Prosecutors Charge"*.

107. The aforesaid fabrication of evidence caused **FELICIANO'S** and the Proposed Class to suffer a deprivation of their liberty ranging from one week to four years' incarceration, to probation, in patient drug programs, and post release supervision (Parole). **FELICIANO'S** was sentence to 47 " hell" days incarceration.

108. By reason of the forgoing, the defendants became liable to **FELICIANO'S** and the Proposed Class in a sum of money which exceeds the jurisdiction limits of all courts of lesser.

## COUNT THREE

## AGAINST DEFENDANTS FOR VIOLATIONS OF 42 § 1983 AND THE FOURTEENTH AMENDMENT AND VIOLATIONS FOR DENIAL OF DUE PROCESS OF LAW IN VIOLATION OF THE NEW YORK AND UNITED STATES CONSTITUTIONS ON BEHALF OF THE PROPOSED CLASS AND FELICIANO

109. Plaintiff on behalf of those similarly situated repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force.

110. It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by police officers When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial.

111. The plaintiff and all those similarly situated were denied their right to a fair trial i.e., they were subjected to a deprivation of liberty without due process of law in violation of New York and United States Constitution pursuant to the due process clause of the Fourteenth Amendment by the participation of **FRANCO** in ALL of the prosecutions mentioned herein.

112. **FRANCO** created false information and provided that information to the District Attorneys which was then used in **FELICIANO'S** and the proposed Class prosecution, **SEE EXHIBIT E,INFRA,** *ORDERS by Bronx Supreme Court Judge, Hon. Efrain Alvarado vacating and dismissing Shamar Jefferson, Bacilio Torres, Rosina Feliciano and Aylye Restituyo indictments because the defendants were denied due process of law, violative of the New York State and the United States Constitutions.*

113. The defendant **FRANCO** consciously lied in generating **FELICIANO'S** felony complaint as well as the rest of the Proposed Class.

114. A hearing was held in Bronx Supreme Court, Part 17 to review certain convictions to see if **FRANCO** played a key role in bringing about those prosecutions.

115. Because **FRANCO** was already thoroughly, investigated by The Bronx, Brooklyn and Manhattan District Attorney's Office, as well as an internal investigation by the same police

department **FRANCO** worked for, and it was found, by unequivocal, substantiated evidence that **FRANCO** lied and provided material false evidence in at least 19 documented cases, **FRANCO'S** creditability was called into questions in cases he acted an undercover, from 2011-2015.

116.    No independent evidence was found to have convicted these people, other than the word of **FRANCO** and instead of investigating each case individually, the prosecutors conducted mass exonerations only of those cases **FRANCO** played a key role as an undercover policeman.

117.    The hearing involved here was a CPL 440.10 hearing to determine if the conviction was obtained in violation of a right of the defendant under the constitution of this state or of the United States See C.P.L 440.10(h).

118.    Each defendant **FELICIANO'S** and those listed in **EXHIBIT G**, Infra, had a defense attorney assigned to him or her and the BDAO was represented by their own assistant(s), who in turn represented **FRANCO**, the officer whose conduct was under review. Evidence was presented by both sides, including **EXHIBIT E**, infra, by the BDAO. Argument of Counsel was heard and Judge Alvardo after due deliberation decreed that all of the petitioners suffered a denial Due Process in violation of the United States Constitution.

119.    Defendants' action resulted in the plaintiff and the Proposed Class being arrested handcuffed, incarcerated, forced to appear in court, and endure the fear of being sentenced to jail.

120.    By reason of the aforesaid, the plaintiff, and the Proposed Class have been damaged, and they are entitled to compensatory damages in the sum to be determined by the Court.

## COUNT FOUR

## MUNICPAL LIABILTIY FOR CONTITUTIONAL VIOLATIONS:

### MONELL CLAIM

121.    Plaintiff and the proposed Class reallege and incorporate by reference the allegations set forth in paragraphs "1' through "120" of this class action complaint.

122.    In short order, **FRANCO**, the investigating official, lied about the evidence he directly produced, either by his observations or direct participation and interaction with **FELICIANO'S** and all those similarly situated, knowing that the evidence he provided would likely influence a jury's verdict.

123.    **FELICIANO'S** and the Proposed Class submit that **FRANCO'S** pattern, custom and practice of falsifying evidence was so widespread and permeant that it had the force of an officially adopted policy. This pattern and practice was the cause of **FELICIANO'S** injuries (as well as the Proposed Class.).

124.    Police corruption is not a new problem that afflicts the N.Y.P.D. The last widespread police scandal involved close to fifty officers of the 30th precinct with hundreds of convictions tossed out due to a custom or practice of "testilying", booming (breaking down doors without search warrants, and flaking people, (planting evidence on innocent people). The 1994 Mollen Commission Report documented all this police corruption. This report is too remote in time, too tangential and too vague to establish the custom and practice **FRANCO** practiced.

125.    Fast forward to 2009, and a widespread pattern and practice so persistent and widespread as to practically have the force of law is being carried out by FRANCO.

126.    Former detective Stephen Anderson testified under a cooperation agreement in the corruption trial of Brooklyn South Narcotics Detective Jason Arbeeny than it was common practice to fabricate drug charges against innocent people to meet arrest quotas. **SEE EXHBIT O**, *New York News Article, We Fabricated Drug Charges Against Innocent People to Meet Arrest Quotas.*

127.    This practice of meeting quotas impacted the arrest of **FELICIANO** and those similarly situated. **FRANCO'S** tainted convictions range from 2011 to 2015 which were obtained after the quota practice came to light. **SEE EXHIBIT P**, *News Article, Fromer New York Police Officer Blows Lid Off Drug Planting Scheme.*

128.    Other lawsuits involving **FRANCO** himself, including reports from the CCRB are similar enough to **FELICIANO'S** own case, and those similarly situated, that they demonstrate a policy, practice or custom that pervades the NYPD. **SEE EXHIBIT Q**, *Article Detailing 16 Known Lawsuits Against* **FRANCO**, *All Similar to* **FELICIANO'S** *Claims in This Complaint.*

129.    The municipal liability claim under section 1983 is premised upon the underlying constitutional violation of **FELICIANO'S** and the Proposed Class due process rights under the Fourteenth Amendment and violation of their Fourth Amendment rights due to malicious prosecution.

130.    **FRANCO** created false information which he memorialized in NYPD and BDAO cases files and he testified falsely before grand juries and to fellow police officers whose job it was to sign felony criminal complaints under penalty of perjury which all impacted the cases against those arrested. **FRANCO** violated the accused' constitutional right to a fair trial.

131.    **FRANCO'S** widespread pattern and practice of police corruption and misconduct was so widespread that his arrest no only involved at least 100 tainted convictions in Bronx County **SEE EXHIBITS D and F, infra.** *FRANCO'S custom and practice of Falsifying Reports covered Hundreds of cases in King's County and*

*New York County.* **SEE EXHIBIT R**, *Brooklyn District Attorneys Will Purge 90 Convictions Involving an Indicted Detective* (**FRANCO**).

132.   Considering the various allegations made by **FELICIANO** and the Proposed Class (especially those four lawsuits already filed by my office against the City of New York and **FRANCO**), they have provided enough detail about their own arrests and convictions to identify a factually similar pattern, practice, and custom so persistent and widespread throughout the N.Y.P.D so as to give these patterns of corrupt behavior by **FRANCO** the force and flavor of law.

133.   The elements of a Monell Claim are met here because a widespread pattern of corrupt behavior that constituted a custom or usage with the force of law caused **FELICIANO'S** and the Proposed Class to be subjected to the deprivation of a fair trial in violation of the New York State and United States Constitutions. **SEE EXHIBITS A- R** attached to this compliant.

134.   All totaled, at least five hundred convictions have been vacated because of **FRANCO'S** key role in those convictions. Prior to 2011 the responsible policy making officials of defendant City knew or in the exercise of reasonable care should have known, that individual police officers of the City had engaged in a pattern and practice of illegal and unconstitutional conduct, including fabricating evidence, malicious prosecutions, and the denial of due process of law. Specifically, defendant **CITY** knew or should have known that defendant Police Officer **FRANCO** and other Bronx police officers had maliciously prosecuted and denied due process of law to numerous other people, resulting in tainted prosecutions,

135.    Despite knowledge of the aforesaid, pattern and practice defendant CITY failed to properly investigate this conduct and failed to supervise, train and discipline the officers of the New York **CITY** Police Department, Defendant City adopted a "hands off" policy of custom with regard to such illegal and unconstitutional acts committed by police officers, which encouraged the individual defendants in this case to believe that they could violate the constitutional rights of the plaintiff and the Proposed Class with impunity and with the explicit or tacit approval of the defendant **CITY**, in violation of 42 U.S.C § 1983.

136.    As a result of the foregoing, plaintiff and Proposed Class sustained the damages and injuries previously descried and seek compensatory damaged from the **CITY** of New York.

## THE COURT SHOULD APPOINT THE UNDERSIGNED AS A CLASS COUNSEL

137.    Rule 23(g)(1) provides that "unless a statue provides otherwise, a court that certifies a class must appoint class counsel. "Rule 23(g)(1)(A) outlines the factors relevant to the appointment of class counsel:

(i)    The work counsel has done in identifying or investigating potential claims in this action;

(ii)     counsel's experience in handling class actions, other complex litigation ( Despradel et.,al., v American Airlines ,et.,al., 02-cv-4725, S.D.N.Y, SETTLED FOR 4.5 MILLION DOLLARS) and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law and

(iv)     the resources that counsel will commit to representing the class[.]

138.    All of these factors weigh in favor of appointing the undersigned as class counsel. Accordingly, Plaintiff requests the Court appoint as class counsel the undersigned attorney.

## DAMAGES

139.    As a direct and proximate result of the said acts of the defendant, **FELICIANO**, and all those similarly situated, suffered the following injuries and damages:

a.    Violations of their rights under the Fourth and Fourteenth Amendments to the Constitutions;

b.    Loss of physical liberty due to incarceration and other forms of restriction on liberty;

c.    Further restriction on their liberty due to forced court appearances;

d.    Humiliation, embarrassment, injury, to reputation, physical abuse;

e.    Extreme emotional distress

f.    Sever disruption of family

140.    Defendant, through the conduct of corrupt police officers, including **FRANCO**, violated the civil rights of close to 324 people, whose convictions were vacated and dismissed.

141.    Many people were denied due process of law, violative of the United States Constitution.

142.    The Class members deserve a meaningful opportunity to recover damages from these constitutional violations. Certifying the proposed Class will be the most effective route to redress this wrong.

143.    FELICIANO, on behalf of all those similarly situated, requests the court:

    I.  Certify this case as a class action with the following class definitions: All persons who were prosecuted because of **FRANCO's** key participation and as a result had their criminal conviction vacated and dismissed;

    II.  Appoint Plaintiff **ROSINA FELICIANO** as Class representative;

    III.  Appoint as Class Counsel the Law Office of Rudy Velez & Associates;

    IV.  Award compensatory damages in an amount to be determined by the court;

    V.  Award attorney's fees as fair and reasonable compensation for services rendered in connection with this action;

    VI.  Grant further relief that may be just and proper.

Dated: New York, New York
      January 20, 2025

Respectfully Submitted:

LAW OFFICE OF RUDY VELEZ & assoc.
930 GRAND CONCOURSE
SUITE 1A
BRONX,NEW YORK 10451
rvesq@yahoo.com